IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–01793–EWN–BNB


PATRICIA EMERSON,

      Plaintiff,

v.

WEMBLEY USA INC.;
WEMBLEY INC.;
ROBERT TY HOWARD, in his personal capacity; and
JEFFREY GOERGEN, in his personal capacity,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a defamation and Title VII case.  Plaintiff Patricia Emerson alleges that Defendants

Wembley Inc., ("Wembley") Wembley USA, Inc., ("Wembley USA"), and Robert Ty Howard

(collectively, "Defendants"): (1) discriminated and retaliated against her in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (2006), (2) published

defamatory statements about her, and (3) committed various state law violations.[1]  Plaintiff seeks

compensatory, punitive, and non-economic damages.  This matter is before the court on

---

[1]Defendant Jeffery Goergen was dismissed from this case with prejudice on July 1, 2005, pursuant to the parties' stipulation.  (Stipulation for Dismissal with Prejudice [filed July 1, 2005].)

Defendants "Wembley Inc.'s Second Renewed Motion for Summary Judgment and Wembley

USA, Inc.'s Second Renewed Motion for Partial Summary Judgment," filed on December 9,

2005.  Jurisdiction is premised upon federal question and supplemental jurisdiction, 28 U.S.C. §§

1331, 1367 (2006).

## FACTS

### 1.    *Factual Background*

Plaintiff worked for Defendant Wembley USA from approximately January 1999 through

December 2002.  (Br. in Supp. of Wembley Inc.'s Second Renewed Mot. for Summ. J. and

Wembley USA, Inc.'s Second Renewed Mot. for Summ. J., Statement of Undisputed Material

Facts ¶ 1 [filed Dec. 9, 2005] [hereinafter "Defs.' Br."]; *admitted at* Pl.'s Resp. to Wembly [sic]

Inc.'s Second Renewed Mot. for Summ. J. and Wembly [sic] USA Inc.'s Second Renewed Mot.

for Partial Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed Dec. 22, 2005]

[hereinafter "Pl.'s Resp.].)[2]  Defendant Wembley USA is a wholly-owned subsidiary of Defendant

---

[2]I emphasize that pursuant to my procedural rules:
[a]ny party opposing the motion for summary judgment shall, in a section . . .
styled "Response to Statement of Undisputed Facts," admit or deny the asserted
material facts set forth by the movant.  The admission or denial shall be made in
separate paragraphs numbered to correspond to movant's paragraph numbering.
Any denial shall be accompanied by a brief factual explanation of the reasons for
the denial and a specific reference to material in the record supporting the denial.
(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary
Judgment ¶ 4.)  In plain contravention of my rules, Plaintiff's numbering scheme in her response
brief bears only a vague resemblance to that contained in Defendants Wembley and Wembley
USA's Statement of Undisputed Material Facts.  Further, Plaintiff's last numbered paragraph
contains the following amorphous denial: "Plaintiff disputes all other facts listed as undisputed."
(Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  In effect, Plaintiff has forced
the court to scour painstakingly through the parties' submissions in an effort to determine whether

Wembley.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  Plaintiff worked as a controller in Defendant Wembley USA's accounting department and performed accounting and other financial functions for all of the Wembley-affiliated companies, including Defendant Wembley and its subsidiaries. (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

From January 1999 through April 2001, Plaintiff reported directly to David Brents, who served as Defendant Wembley USA's chief financial officer ("CFO"), and Skip Sherman, who served as its president and chief executive officer ("CEO").  (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.) On or about January 1, 1999, Brents presented Plaintiff with a letter that stated in relevant part: "[i]n the event that the Company chooses to terminate [Plaintiff's] employment for any reason, [Plaintiff] will be entitled to payment of one year's full pay."[3]  (*Id.*, Statement of Undisputed Material Facts ¶ 13, Ex. A–11 [1/1/99 Letter]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)

_____

and which of Plaintiff's fifteen substantive responses correspond to Defendants Wembley and Wembley USA's properly proffered twenty-five statements.  I deem admitted any properly substantiated statements to which Plaintiff does not directly respond.  I admonish Plaintiff for her capricious and desultory approach and urge Plaintiff's counsel to follow my rules in future submissions to this court.

[3]Due to the dispute regarding the identity of Plaintiff's employer, I do not substitute any of Defendants for the term "Company."

From April 2001 through October 2001, Plaintiff reported directly to Defendant Howard, who served as: (1) Defendant Wembley USA's president, CEO, CFO, and treasurer; and (2) Defendant Wembley's president, CEO, CFO, and treasurer.  (*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.) Plaintiff asserts that in April 2001, she became the acting CFO for Defendants Wembley and Wembley USA.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 14; *disputed at* Reply Br. in Supp. of Wembley, Inc.'s Second Renewed Mot. for Summ. J. and Wembley USA, Inc.'s Second Renewed Mot. for Partial Summ. J., Resp. Concerning Disputed Facts ¶ 14 [filed Jan. 9, 2006] [hereinafter "Defs.' Reply."].)[4]  Plaintiff asserts that she did not receive salary or benefits commensurate with her position.  (*Id.*, Statement of Additional Disputed Facts ¶ 15, Ex. B–11 [11/16/01 Electronic Mail Message]; *disputed at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 15.)

In July and August 2001, Plaintiff complained to Defendants that she was being discriminated against based on her sex.  (*Id.*, Statement of Additional Disputed Facts ¶ 20; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 20.)  In October 2001, Defendants Wembley and Wembley USA hired former Defendant Goergen as CFO.  (*Id.*, Statement of Additional Disputed Facts ¶ 22; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 22.) Plaintiff asserts that Defendants Wembley and Wembley USA replaced Plaintiff with Goergen. (*Id.*, Statement of Additional Disputed Facts ¶ 20; *disputed at* Defs.' Reply, Resp. Concerning

---

[4]On January 9, 2006 and January 11, 2006, Defendants Wembley and Wembley USA appear to have filed three duplicate copies of their reply brief.

Disputed Facts ¶ 20.)  On October 25, 2001, Plaintiff filed her first charge of discrimination against Defendant Wembley USA with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged Defendant Wembley USA discriminated against her based on her sex.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 10, Ex. A–7 [10/25/01 Charge of Discrimination]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts.)  Plaintiff's EEOC charge was based in part on Defendants' decision to hire former Defendant Goergen as CFO.  (Defs.' Br., Ex. A–7 [10/25/01 Charge of Discrimination].)  From October 2001 through the end of her employment in December 2002, Plaintiff reported to former Defendant Goergen.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 7–8; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 6–7.)

In February 2002, Plaintiff was subpoenaed to testify before a Rhode Island state grand jury in connection with an investigation into Defendants Wembley and Wembley USA's work in that state.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 26; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 26.)  Plaintiff asserts that after she gave her testimony, Defendant Howard and former Defendant Goergen ignored her, criticized her abilities and performance, and perpetuated a hostile work environment.  (*Id.*, Statement of Additional Disputed Facts ¶ 26; *disputed at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 26.)

On June 3, 2002, Plaintiff filed a second charge of discrimination with the EEOC, in which she alleged Defendant Wembley USA continued to discriminate and retaliate against her based on her sex and age.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 11, Ex A–8 [6/3/02 Charge of Discrimination]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts.)  In August 2002, Plaintiff informed former Defendant Goergen that the alleged hostile work environment was making her "unable to function in the workplace."  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 34, Ex. B–23 [8/12/02 Electronic Mail Message]; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 34.)  From August 8, 2002 through October 12, 2002, Plaintiff took sick leave followed by a leave of absence under the federal Family Medical Leave Act.  (*Id.*, Statement of Additional Disputed Facts ¶ 38, Ex. B–23 [8/8/02 Letter; 9/12/02 Electronic Mail Message]; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 38.)

Plaintiff's performance evaluation was postponed due to her leave of absence.  (*Id.*, Ex. B–23 [8/8/02 Letter].)  On November 5, 2002, Plaintiff received a performance evaluation that was negative in part.  (*Id.*, Statement of Additional Disputed Facts ¶ 46; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 46; *see also* Defs.' Br., Ex. A–6 [11/5/02 Performance Evaluation].)

On December 12, 2002, Plaintiff sent former Defendant Goergen an electronic mail message outlining her feelings that he had excluded her in her role at work.  (Defs.' Br., Ex. A–15 [12/12/02 Electronic Mail Message].)  On December 13, 2002, former Defendant Goergen responded, but sent his electronic message reply to Plaintiff and multiple individuals, including some who worked for Defendants Wembley and Wembley USA.  (*Id.*, Statement of Additional Disputed Facts ¶ 48; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 48; *see also* Defs.' Br., Ex. A–15 [12/13/02 Electronic Mail Message].)  Plaintiff asserts that as a result of former Defendant Goergen's reply, she was "humiliated, distraught, embarrassed[,] and stupefied

to such great extent that she was forced to immediately [sic] resign" from her employment.  (*Id.*, Statement of Additional Disputed Facts ¶ 49; *disputed at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 49.)  None of the Defendants has paid Plaintiff severance pay pursuant to the aforementioned January 1, 1999 severance agreement.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)

On January 28, 2003, Plaintiff filed a third charge with the EEOC, in which she alleged continuing retaliation against her based on her sex.  (*Id.*, Statement of Undisputed Material Facts ¶ 12, Ex A–10 [1/28/03 Charge of Discrimination]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)

## 2.   *Procedural History*

 On May 30, 2003, Plaintiff received a right to sue letter from the EEOC.  (Pl.'s Resp., Ex. B–27 [5/30/03 Notice of Right to Sue].)  On August 21, 2003, Plaintiff filed her initial complaint against Defendants in the District Court of Adams County, Colorado.  (Notice of Removal of Civil Action from the Adams County District Court, Colorado [filed Sept. 12, 2003], Ex. C [Compl. and Jury Demand].)  On August 26, 2003, Plaintiff filed an amended complaint, in which she asserts eleven claims for relief: (1) libel *per se* against former Defendant Goergen; (2) libel *per se* against Defendants Wembley and Wembley USA; (3) libel and slander *per se* against Defendant Howard; (4) libel and slander *per se* against Defendants Wembley and Wembley USA; (5) breach of contract against Defendants Wembley and Wembley USA; (6) sex discrimination against Defendants Wembley and Wembley USA; (7) unlawful retaliation against Defendants

Wembley and Wembley USA; (8) wrongful discharge against Defendants Wembley and Wembley USA; (9) violation of Colorado Revised Statutes section 8–2.5–101 against Defendants Wembley and Wembley USA; (10) outrageous conduct against Defendants Wembley and Wembley USA; and (11) negligent infliction of emotional distress against former Defendant Goergen. (*Id.*, Ex. A [Amended Complaint].) On September 12, 2003, Defendants removed Plaintiff's action to this court. (*Id.*) On September 18, 2003, Defendants filed an answer to Plaintiff's complaint. (Answer [filed Sept. 18, 2003].)

On September 19, 2003, Plaintiff filed an objection to removal and a petition to remand the action to state court. (Pl.'s Objection to Removal and Pet. for Remand to State Court [filed Sept. 19, 2003].) Plaintiff emphasized that only one of her eleven claims invoked the protection of federal law, and noted the claim in question also invoked Colorado State law. (*Id.*) As a solution, Plaintiff suggested that she might delete the words "Title VII" from her complaint. (*Id.*) On October 10, 2003, Defendants filed a response to Plaintiff's petition. (Def.'s Mem. Br. in Opp'n to Pl.'s Pet. to Remand and Request for Oral Argument [filed Oct. 10, 2003].) On October 27, 2003, Plaintiff concurrently filed a reply brief in support of her motion and a motion for leave to amend her complaint. (Pl.'s Reply to Defs.' Mem. Br. in Opp'n to Pl.'s Pet. to Remand and in the Alternative, Request for Leave to Am. Compl. as Justice so Requires [filed Oct. 27, 2003].) On March 10, 2004, the magistrate judge ordered Plaintiff to disclose whether she intended to pursue a claim under any federal statute in this case by March 16, 2004. (Courtroom Mins. [filed Mar. 10, 2004].) Evidently, Plaintiff did not comply. On March 22, 2004, the magistrate judge issued an order to show cause why the case should not be dismissed by

March 30, 2004.  (Order [filed Mar. 22, 2004].)  On March 29, 2004, Plaintiff satisfied the order

to show cause by filing a statement that she intended to pursue a claim under Title VII.  (Pl.'s

Statement of Compliance with Court's Order of Mar. 10, 2004 [filed Mar. 29, 2004].)  On April

20, 2004, the parties filed a stipulated motion to withdraw Plaintiff's petition for remand.

(Stipulated Mot. to Withdraw Pl.'s Pet. for Remand [filed Apr. 20, 2004].)  On June 14, 2004, I

granted the motion.  (Min. Order [filed June 14, 2004].)

On April 21, 2004, Plaintiff moved to amend her complaint to seek exemplary damages.

(Pl.'s mot. for Leave of Court to Am. Her Compl. to Seek Exemplary Damages [filed Apr. 21,

2004].)  On May 19, 2004, the magistrate judge granted Plaintiff's motion.  (Order [filed May 19,

2004].)  On the same date, Plaintiff filed a second amended complaint, in which she asserts the

same eleven claims described above.  (Pl.'s Second Am. Compl. [filed May 19, 2004] [hereinafter

"Second Am. Compl."].)

On May 12, 2004, former Defendant Goergen filed a motion for summary judgment, in

which he argued that no evidence existed to support Plaintiff's claims against him.  (Def. Jeffrey

Goergen's Mot. for Summ. J. [filed May 12, 2004].)  On June 1, 2004, Plaintiff responded to the

motion.  (Pl.'s Resp. to Def.' Jeffrey Goergen's Mot. for Summ. J. [filed June 1, 2004].)  On June

21, 2004, Goergen filed a reply in support of his motion.  (Reply in Supp. of Def. Jeffrey

Goergen's Mot. for Summ. J. [filed June 21, 2004].)  On March 31, 2005, I granted Goergen's

motion and dismissed Plaintiff's claims against him.  (Order and Mem. of Decision [filed Mar. 31,

2005] [hereinafter "Order"].)  On July 1, 2005, the parties stipulated to dismiss Goergen with

prejudice.  (Stipulation for Dismissal With Prejudice [filed July 1, 2005].)

On May 12, 2004, Defendants Wembley and Wembley USA filed initial motions for summary judgment and partial summary judgment, respectively.  (Wembley Inc.'s Mot. for Summ. J. and Wembley USA, Inc.'s Mot. for Partial Summ. J. [filed May 12, 2004].)  On June 1, 2004, Plaintiff filed: (1) a cursory, non-substantive response to the motion; and (2) a motion for continuance pursuant to Federal Rule of Civil Procedure 56(f).  (Pl.'s Resp. to Defs.' Wembley USA Inc.'s and Wembley Inc.'s Mot. for Summ. J. [filed June 1, 2004]; Pl.'s Mot. for a Continuance Pursuant to F.R.C.P. 56[f] [filed June 1, 2004].)  In her motion for a continuance, Plaintiff asserted that she could not adequately respond to Defendants Wembley and Wembley USA's motions unless and until such time as she was able to: (1) depose non-party Daniel Bucci, who was awaiting a criminal trial in Rhode Island; and (2) review particular documents under the control of non-parties Leonard O'Brien, Anthony Traini, and John Tarantino.[5]  (Pl.'s Mot. for a Continuance Pursuant to F.R.C.P. 56[f] [filed June 1, 2004].)  On June 22, 2004, Defendants (1) Wembley and Wembley USA filed a response to Plaintiff's motion for a continuance, noting that as of June 17, 2004, all documents responsive to Plaintiff's subpoenas had been produced; and (2) Wembley, Wembley USA, and Howard filed a motion for an extension of time to file their reply brief in support of their motions for summary judgment, specifically requesting to be allowed to reply fifteen days after Plaintiff filed a substantive response to their motions.  (Defs.' Objection to

---

[5]On May 19, 2004, the magistrate judge extended the discovery deadline in this case so that Plaintiff could pursue her "subpoena duces tecum for testimony and production of documents against Daniel Bucci and [her] subpoenas duces tecum for production of documents against Leonard O'Brien, Anthony Traini, and John Tarantino, all of wh[om] were served prior to the close of discovery."  (Order at 1–2 [filed May 19, 2004].)  I note that discovery issues have plagued this case — this particular issue is but *e pluribus unum.*

Pl.'s Mot. for Continuance Pursuant to F.R.C.P. 56[f] [filed June 22, 2004]; Mot. for Extension

of Time to File Reply Regarding Pl.'s [sic] Mot. for Summ. J. [filed June 22, 2004].)  On July 2,

2004, Plaintiff filed a reply brief in support of her motion for a continuance, in which she noted

that her motion was still necessary because she had been unable to depose Bucci due to his

pending criminal trial.  (Pl.'s Reply Br. in Supp. of Her Mot. for Continuance [filed July 2, 2004].)

On March 31, 2005, I: (1) granted Plaintiff's motion and continued Defendants Wembley

and Wembley USA's motions for summary judgment and partial summary judgment until such

time as the motions were fully briefed; and (2) granted Defendants Wembley, Wembley USA, and

Howard's motion for an extension of time to file reply briefs.  (Order at 25.)

On May 19, 2005, I held a status conference, wherein I denied Defendants Wembley and

Wembley USA's motions for summary judgment and partial summary judgment without

prejudice, subject to refiling after ninety days.  (Courtroom Mins. [filed May 19, 2005].)  I also

ordered the parties to submit status reports every thirty days.  (*Id.*)

On August 17, 2005, Defendants Wembley and Wembley USA filed renewed motions for

summary judgment and partial summary judgment, respectively.  (Wembley Inc.'s Renewed Mot.

for Summ. J. and Wembley USA, Inc.'s Renewed Mot. for Partial Summ. J. [filed Aug. 17,

2005].)  On September 12, 2005, Plaintiff responded to the motions.  (Pl.'s Resp. to Wembley

Inc.'s Renewed Mot. for Summ. J. and Wembley USA, Inc.'s Renewed Mot. for Partial Summ. J.

[filed Sept. 12, 2005].)  On September 16, 2005, Plaintiff filed a status report, in which she

indicated that she had not yet had the opportunity to depose Bucci.  (Case Status Report [filed

Sept. 16, 2005].)  On the same date, I held a status conference, during which it was revealed that

Plaintiff might depose Bucci in November 2005.  (Courtroom Mins. [filed Sept. 16, 2006].)  In

light of this delay, I denied Defendants Wembley and Wembley USA's motions without prejudice,

subject to refiling in December 2005.  (*Id.*)  On November 16, 2005, at long last, Plaintiff deposed

Bucci, which brings me to the motion presently before the court.  (Case Status Report [filed Nov.

21, 2005].)

On December 9, 2005, Defendants Wembley and Wembley USA filed second renewed

motions for summary judgment and partial summary judgment, respectively.  (Wembley Inc.'s

Second Renewed Mot. for Summ. J. and Wembley USA, Inc.'s Second Renewed Mot. for Partial

Summ. J. [filed Dec. 9, 2005].)  Defendant Wembley argues it is entitled to summary judgment on

all of Plaintiff claims because it: (1) could not have breached the January 1, 1999 severance

agreement because it was not a party thereto; (2) is not an "employer" as defined by Title VII; and

(3) was not Plaintiff's employer under common law principles.  (Def.'s Br. at 7–17.)

Alternatively, Defendant Wembley joins in Defendant Wembley USA's motion for partial

summary judgment.  (*Id.* at 35.)  Defendant Wembley USA argues it is entitled to summary

judgment on Plaintiff's second, fifth, seventh, eighth, ninth, and tenth claims because: (1)

Plaintiff's defamation claim is based on vicarious liability in connection with a claim that this court

has dismissed; (2) it is not in breach of the January 1, 1999 severance agreement because a

condition precedent was not satisfied; (3) Plaintiff has no basis for her claims for retaliation or

wrongful discharge because she cannot establish that she was constructively discharged; (4)

Plaintiff cannot establish that it took action against her solely because of her grand jury testimony;

-12-

and (5) Plaintiff cannot establish outrageous conduct.  (*Id.* at 7–11, 17–35.)  On December 22,

2005, Plaintiff responded to the motions.  (Pl.'s Resp.)  On January 11, 2006, Defendants

Wembley and Wembley USA filed a reply brief in support of their motions.[6]  (Defs.' Reply.)

On February 8, 2006, Defendants Wembley and Wembley USA filed a motion to compel

in the United States District Court for the District of Rhode Island.  (Notice of Filing of Defs.'

Wembley, Inc.'s and Wembley USA, Inc.'s Mot. to Compel Answers to Dep. Questions by

Witness Dan Bucci [filed Feb. 10, 2006].)  Defendants Wembley and Wembley USA moved the

Rhode Island court to compel Bucci to answer deposition questions or, alternatively, to transfer

jurisdiction over the motion to this court.  (*Id.*, Ex. 1 [Defs.' Wembley, Inc.'s and Wembley USA,

Inc.'s Mot. to Compel Answers to Dep. Questions by Witness Dan Bucci].)  On February 27,

2006, Plaintiff filed a response to Defendants Wembley and Wembley USA's motion to compel.

(Notice of Filing of Pl.'s Resp. to Wembley, Inc.'s and Wembley USA, Inc.'s Mot. to Compel

Answers to Dep. Questions by Witness Dan Bucci [filed Feb. 27, 2006].)  In her response,

Plaintiff argued that the motion should be denied because: (1) a second deposition would pose an

undue burden on Plaintiff, and (2) Bucci had a reasonable basis for pleading the Fifth Amendment

during his deposition.  (*Id.*)  Given that the parties have not notified this court otherwise, I assume

the motion to compel remains pending before the United States District Court for the District of

Rhode Island.

## ANALYSIS

---

[6]The record reflects that Defendant filed two reply briefs on January 11, 2006, which
appear to be duplicates.

1.      *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.**     ***Evaluation of Claims***

**a.**     ***Preliminary Matter: Adverse Evidentiary Inference***

In her opposition brief to Defendants Wembley and Wembley USA's motions, Plaintiff

notes that Bucci refused to answer many of the questions she asked while deposing him, citing his

Fifth Amendment right not to incriminate himself.  (Pl.'s Resp. at 42–53, Ex. B–34, *passim*

[Bucci Dep.].)  Plaintiff speculates that, *inter alia*, Bucci: (1) "would have testified" about the

corporate structural organization between Defendants Wembley and Wembley USA; (2) would

have made "statements supporting [] Plaintiff's claim of gender discrimination;" and (3) would

have given testimony to support her claim of witness intimidation regarding her grand jury

testimony.  (*Id.* at 46, 48–50.)  Based on the foregoing, Plaintiff argues that because she "has

been foreclosed from using [Bucci's] vital testimony" she is entitled to an adverse inference

against Defendants Wembley and Wembley USA on all of Bucci's unanswered questions.  (*Id.* at

51.)

Relevant precedent for such request against a non-party is sparse, and binding precedent is

non-existent.  Plaintiff cites a number of cases in which the parties to litigation or other

proceeding invoked the Fifth Amendment privilege against self-incrimination.[7]  (Pl.'s Br. at

---

[7]*See Baxter v. Palmigiano*, 425 U.S. 308, 320 (1976) (finding adverse inference
acceptable based on an inmate's silence during disciplinary proceedings); *SEC v. Colello*, 139
F.3d 674, 677 (9th Cir. 1998) (finding adverse inference and other penalties appropriate where
plaintiff invokes privilege); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1089 (5th Cir.
1979) (permitting three-year stay of discovery where plaintiff invoked Fifth Amendment
privilege); *Steiner v. Minn. Life Ins. Co.*, 85 P.3d 135, 136 (Colo. 2004) (propounding factors for
consideration before dismissing the case where a plaintiff invokes Fifth Amendment privilege prior
to trial); *Chaffin, Inc. v. Wallain*, 689 P.2d 684, 688–89 (Colo. Ct. App. 1984) (holding adverse

44–46.)   More persuasively, Defendants Wembley and Wembley USA cite *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), in which the Second Circuit considered whether a non-party witness's invocation of his Fifth Amendment rights warranted an adverse inference against the plaintiff.  (Defs.' Reply at 23.)  The *LiButti* Court stressed that "the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth" and propounded four factors as guidance for a trial court in making such a determination: (1) the nature of the relevant relationships; (2) the degree of control the party vests in the non-party witness with regard to key facts and the subject matter of the litigation; (3) the compatibility of the interests of the party and non-party witnesses in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.  *LiButti*, 107 F.3d at 123–24.  I address each factor in turn.

> ### i.        The Nature of the Relevant Relationships

The *LiButti* Court noted that "[w]hile no particular relationship governs, the nature of the relationship will invariably be the most significant circumstance."  *LiButti*, 107 F.3d at 123. Further, the court urged trial courts to examine such relationships from the perspective of the non-party witness's loyalty to either party in the case, noting "[t]he closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship."  *Id.*  Here, this factor arguably weighs in Plaintiff's

---

inference permissible in the face of defendants' repeated invocation of Fifth Amendment privilege in discovery responses).  Especially surprising is Plaintiff's heavy reliance on the Colorado Supreme Court holding in *Steiner, M.D. v. Minn. Life Ins. Co.*, 85 P.3d 135 (Colo. 2004), a case in which the *plaintiff* invoked  his Fifth Amendment rights prior to trial.

favor.  Bucci formerly had a business relationship with Defendants Wembley and Wembley USA, potentially making it less likely that he would testify negatively against them.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 54, *admitted in relevant part at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 54.)  Analysis of the remaining factors does not support Plaintiff's stance.

### ii.        *The Degree of Control of the Party Over the Non-Party Witness*

The *LiButti* Court held that the "degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation" may inform the trial court whether assertion of the privilege could be viewed as a vicarious admission. *LiButti*, 107 F.3d at 123.  As will be discussed in more detail below, the vast majority Plaintiff's allegations and claims relate to or arise out of the Defendants' actions and Plaintiff's alleged constructive discharge.  (Second Am. Compl. ¶¶ 7–90.)  At best, Bucci is a tangential figure to this litigation.  It is thus quite difficult to conceive that Defendants vested in Bucci key facts regarding the litigation in the instant case.

### iii.       *Compatibility of the Interests of the Party and Non-Party Witness in the Outcome of the Litigation*

The *LiButti* Court directed that "[t]he trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *LiButti*, 107 F.3d at 123.  Here, Bucci no longer works for or with Defendants Wembley and Wembley USA.  (Defs.' Resp., Ex. A–17 at 60 [Bucci Dep.].)   Further, in one of

the few questions he answered substantively, Bucci testified that he has no interest in the outcome of Plaintiff's case.  (*Id.*, Ex. A–17 at 60–61 [Bucci Dep.].)  It is thus markedly difficult to ascertain Bucci's potential interest in the outcome of a discrimination and defamation case against Defendants.

### iv.     *Role of the Non-Party Witness in the Litigation*

Pursuant to *LiButti*, "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects also logically merits consideration by the trial court."  *LiButti*, 107 F.3d at 123–24.  Here, it is difficult to characterize Bucci as a key figure in this litigation.  Plaintiff admits that, at best, Bucci would have made statements supportive of Plaintiff's claims.  (Pl.'s Resp. at 42–53.)  Plaintiff does not assert that she reported to Bucci as a supervisor during her employment or that Bucci directly took any part in the alleged actions that give rise to any of her claims.  (Second Am. Compl, *passim*; Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 4–6.)

### v.     *Overarching Concern*

Under *LiButti*, the court's "overarching concern" in making its determination is whether the adverse inference: (1) is trustworthy considering all of the circumstances, and (2) "will advance the search for the truth" in this case.  *LiButti*, 107 F.3d at 123.  Here, the adverse inference Plaintiff seeks is massive in scope.  Plaintiff seeks an inference in her favor on all of the questions Bucci refused to answer, which, in this case, is nearly all of the questions posed.  (Pl.'s Resp., Ex. B–34 at 10–39, 47–49, 53–56 [Bucci Dep.].)  Indeed, the topics of the unanswered questions range from Plaintiff's employment status and duties; to the reasoning behind hiring

Goergen as CFO; to the corporate structure between Defendant Wembley, Wembley USA, and the other Wembley companies; to the timing of alleged retaliatory adverse employment actions; and beyond.  (*Id.*, Ex. B–34 at 16, 17, 22, 25, 29, 32 [Bucci Dep.].)

To grant the adverse inference would be unfair on many levels.  First, it is difficult to imagine that Bucci was the only source of the answer to several of Plaintiff's questions, including, for example, whether Plaintiff was Defendant Wembley's only female officer, and whether Defendants Wembley and Wembley USA maintained the same registered agents, officers, and directors.  (*Id.*, Ex. B–34 at 16, 32 [Bucci Dep.].)  Simply granting an inference would not be trustworthy considering that the circumstances would seem to allow for Plaintiff to find her answers elsewhere.[8]

Further, granting the inference on certain of Plaintiff's questions would unfairly favor Plaintiff's case.  For example, without laying any foundation that Bucci had any role in hiring Defendants Wembley and Wembley USA's CFO, Plaintiff asked "[w]as the only reason Mr. Goergen was hired the fact that he was a male?"  (Pl.'s Resp., Ex. B–34 at 25 [Bucci Dep.].)  Additionally without foundation, Plaintiff asked whether Bucci was "aware that because of [] [Defendants] Wembley[s]and Wembley USA's] treatment toward her, [Plaintiff's] physically [sic]

---

[8]It is not lost on this court that although Plaintiff's argues that an adverse inference would remedy Bucci's unfair refusal to answer the deposition questions, Plaintiff later argues that a motion to compel Bucci to answer should be denied because: (1) Bucci had good reason to refuse to answer, and (2) deposing Bucci again would impose an undue burden on Plaintiff.  (Notice of Filing of Pl.'s Resp. to Wembley Inc.'s and Wembley USA, Inc.'s mot. to Compel Answers to Dep. Questions by Witness Dan Bucci ¶ 4 [filed Feb. 27, 2006].)  Plaintiff appears to partake in the grand tradition of wanting to have one's proverbial cake and eat it too.

and emotional health worsened?" (*Id.*, Ex. B–34 at 37 [Bucci Dep.].)  Again without foundation,

and with an alternate source for the answer, Plaintiff asked whether Bucci ever discussed with

Defendant Howard "how to make [Plaintiff's] work environment so hostile that she would have

no other choice but to leave [her] employment." (*Id.*, Ex. B–34 at 31 [Bucci Dep.].)  To grant an

inference in Plaintiff's favor on questions such as these would allow Plaintiff to bypass several

required steps in proving her case.  Plaintiff cannot use her fruitless deposition as a crutch to prop

up her claims.  Having considered the *LiButti* factors and trustworthiness issues, I find that an

adverse inference in favor of Plaintiff and against Defendants on all unanswered questions posed

to Bucci would not advance this court's pursuit of truth and is not appropriate in this case.

> **b.**     ***Plaintiff's First and Second Claims: Libel Per Se and Agent-Principal***
>
> ***Liability***[9]

In her first claim, Plaintiff asserts that with his December 13, 2002 email, former

Defendant Goergen defamed her through libel *per se*.  (Second Am. Compl.  ¶¶ 45.1–48.1,

45.2.)[10]  In my March 31, 2005 order, I found that former Defendant Goergen's statements did

---

[9]Syntax eludes not only the Plaintiff in this case.  The treatment Defendants Wembley and
Wembley USA afford Plaintiff's complaint in their summary judgment briefing can be euphemized
as highly disruptive resequencing.  In hopes of resurrecting some semblance of clarity, and with a
nod to all the king's horses and all the king's men, I discuss the parties' substantive arguments
following the sequential order of Plaintiff's claims as they appear in her complaint, rather than the
order in which they appear in the parties' submissions to this court.

[10]Plaintiff's second amended complaint contains two sets of paragraphs numbered 45–48.
I distinguish them with my own numbers one and two attached to Plaintiff's paragraph numbers in
the order in which they appear in the pleading.

not constitute libel *per se* as matter of law and dismissed the claim.[11]   (Order at 10–21.)  As her

second claim, Plaintiff asserts that Defendants Wembley and Wembley USA are vicariously liable

for former Defendant Goergen's libelous statements under principal-agent liability theories.

(Second Am. Compl. ¶¶ 46.2–48.2, 49.)  Defendants Wembley and Wembley USA cite my

aforementioned ruling and move for summary judgment on Plaintiff's second claim.  (Defs.' Br. at

34–35.)  Although Defendants Wembley and Wembley USA do not argue as much, no relief may

be had where there has been no wrong.  There is simply no problematic action by the agent for

which to hold its actual or alleged principals liable in this instance.  Accordingly, Defendants

Wembley and Wembley USA are entitled to summary judgment on Plaintiff's second claim.

> **c.      *Plaintiff's Third and Fourth Claims: Libel Per Se, Slander Per Se, and Agent-Principal Liability***

Defendant Wembley moves for summary judgment on Plaintiff's claim for vicarious

liability for libel and slander *per se*.  (Defs.' Br. at 15–17.)  Defendant Wembley USA does not

move for summary judgment on this claim.  (*Id.* at 35.)  Similarly to Plaintiff's first and second

claims, Plaintiff's third and fourth claim are interrelated.  In her third claim, Plaintiff asserts that

Defendant Howard defamed her by publishing a statement accusing her of theft.  (Second Am.

Compl. ¶¶ 50–54.)  In her fourth claim, Plaintiff asserts that Defendants Wembley and Wembley

USA are vicariously liable, because Defendant Howard defamed Plaintiff "in the capacity of his

agency relationship" with Defendants Wembley and Wembley USA.  (*Id.* ¶¶ 55–57.)  Defendant

---

[11]I also found that former Defendant Goergen's actions did not arise to the level of negligent infliction of emotional distress and dismissed Plaintiff's eleventh claim.  (Order at 21–25.)  Accordingly, I do not discuss that claim further here.

Wembley argues it is entitled to summary judgment because it was not Plaintiff's employer under principles of either common law or agency. (Defs.' Br. at 15–17.) Defendant Wembley's argument is so misplaced in this instance, I need not address its substance. Defendant Wembley's employment or agency relationship with Plaintiff is wholly distinct from its relationship with Defendant Howard. The latter is at issue in this claim, but Defendant Wembley speaks only to the former. In so doing, Defendant Wembley falls woefully short of meeting its burden in its motion to show an absence of evidence to support Plaintiff's case. See *Celotex*, 477 U.S. at 325. Accordingly, Defendant Wembley is not entitled to summary judgment on Plaintiff's fourth claim.

### d. *Plaintiff's Fifth Claim: Breach of Contract*

Defendants Wembley and Wembley USA move for summary judgment on Plaintiff's fifth claim for relief, in which she asserts that Defendants Wembley and Wembley USA breached a contractual agreement among them that provided for severance pay in the event of Plaintiff's termination from employment. (Defs.' Br. at 7–13; Compl. ¶¶ 58–61.) Defendants Wembley and Wembley USA argue they are entitled to summary judgment on Plaintiff's claim because: (1) Defendant Wembley is not a party to the contract, thereby eliminating the possibility of breach on its part; and (2) a condition precedent contemplated in the contract was not satisfied, thereby excusing both Defendants Wembley and Wembley USA's performance. (Defs.' Br. at 7–13.)

In Colorado, a successful breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the defendant; and (4) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In this case, I need only discuss the first and third elements.

### i.      *Existence of the Contract with Respect to Defendants Wembley and Wembley USA*

Under Colorado law, contract interpretation is "a question of law to be resolved by the court." *Denver Ctr. for the Performing Arts v. Briggs*, 696 P.2d 299, 306 (Colo. 1985); *see also Grant v. Pharmacia & Upjohn Co.*, 314 F.3d 488, 491 (10th Cir. 2002) (citing *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 [Colo. 1990]).  Plaintiff testified that the contract she alleges Defendants Wembley and Wembley USA breached exists in the form of a letter dated January 1, 1999 (the "Severance Agreement"), which reads as follows:

> [t]he purpose of this letter is to confirm in writing the oral agreement with regard to [Plaintiff's] employment with [Defendant] Wembley USA.  In the event the Company chooses to terminate [Plaintiff's] employment for any reason, [Plaintiff] will be entitled to payment of one-year's [sic] full pay.

(Defs.' Br., Ex. A–1 at 189 [Emerson Dep.], Ex. A–11 [1/1/99 Letter].)  It is patently clear from the language of the instrument on its face — and apparently not disputed — that Defendant Wembley USA is a party to the Severance Agreement.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 13.)  The question remains whether Defendant Wembley is also a party. Defendant Wembley argues that it is not, as evidenced by the instrument's plain language.  (Defs.' Br. at 11–13.)  Plaintiff does not directly address Defendant Wembley's argument, but it is a fundamental principle of law that "provisions of a contract cannot be enforced against those who are not parties to the contract."  *Broderick v. McElroy & McCoy, Inc.*, 961 P.2d 504, 506 (Colo. Ct. App. 1997); *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")  Thus, to the extent she asserts that Defendant

Wembley is liable for breach, by implication Plaintiff necessarily asserts that Defendant Wembley is a party to the Severance Agreement.

In Colorado, "[w]hether . . . a contract is ambiguous is also a question of law for the court." *Denver Ctr. for the Performing Arts*, 626 P.2d at 306; *see also Fibreglas Fabricators*, 799 P.2d at 374. Significantly, "'the fact that the parties disagree as to the meaning of the terms of the contract does not lead necessarily to the conclusion that the contract is ambiguous.'" *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1232 (10th Cir. 1999) (quoting *Denver Ctr. for the Performing Arts*, 626 P.2d at 306). "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed . . . and [t]he plain effect of a contract should not be destroyed by strained construction." *Bennett*, 189 F.3d at 1232 (citing *Denver Ctr. for the Performing Arts*, 626 P.2d at 306; *Radiology Prof'l Corp. v. Trinidad Area Health Assoc.*, 195 Colo. 253, 577 P.2d 748, 750 [Colo. 1978]). In the instant case, the plain effect of the language of the Severance Agreement is that Defendant Wembley USA would be obligated to pay a severance of one year's salary in the event it terminated Plaintiff's employment. Defendant Wembley is not a party to the Severance Agreement by its plain meaning, and therefore cannot be bound by its terms.

In her complaint, Plaintiff expressly and exclusively refers to the Severance Agreement "with Plaintiff to provide severance pay in the event of Plaintiff's job separation." (Second Am. Compl. ¶ 59.) Rather than directly addressing Defendant Wembley's argument regarding the Severance Agreement, Plaintiff asserts a new claim — that Defendant Wembley is in breach of a

separate contract, an indemnification agreement regarding confidential information Plaintiff

provided to her employer.  (Pl.'s Resp. at 32–33.)  Purportedly in support of her argument,

Plaintiff cites a letter dated April 12, 2001 (the "Indemnification Agreement"), addressed to

Plaintiff, and printed on Wembley plc letterhead.[12]  The Indemnification Agreement is signed by

Mark Elliot "for and on behalf of Wembley plc/Wembley USA" and reads in relevant part:

> Wembley acknowledges that you made certain statements and provided
> information to it of a confidential nature for its benefit. . . .  Wembley agrees to
> indemnify you for any loss or damage you suffer as a result of such disclosures,
> including underwriting any legal costs involved in defending any claim or law suit
> [sic] against you on the following terms:
> 1.     You notify us promptly in writing of any claim or potential claim;
> 2.     Wembley has the right to take over the conduct of any defense to any claim
>        brought against you; [and]
> 3.     No settlement or compromise is made without our prior written consent

(Pl.'s Resp., Ex. B-12 [4/12/01 Letter].)  Plaintiff argues that she "was harassed and

constructively discharged because she provided such information to Wembley," and "Wembley

should indemnify Plaintiff for the damages she incurred as a result of her constructive discharge"

as per the agreement.[13]  (*Id.* at 32.)

Courts may treat new claims raised in a plaintiff's opposition to summary judgment as a

motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15.  *See* Fed. R. Civ.

P. 15 (2006); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998).

---

[12]Wembley plc is the English parent company of Defendants Wembley and Wembley USA.
(Pl.'s Resp., Statement of Additional Disputed Facts ¶ 17; *admitted at* Defs.' Reply, Resp.
Concerning Disputed Facts ¶ 17.)

[13]Plaintiff does not specify to which Wembley-affiliated entity she refers.  Therefore, I do
not substitute any of the Defendants or Wembley plc into my citation of Plaintiff's brief.

Generally, a plaintiff ought not be prohibited to pursue a valid claim due to the plaintiff's failure to set forth in the complaint a theory upon which she could recover, so long as the "'late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1219 at 194 [1990]).  Indeed, the Tenth Circuit has held that "the purpose of 'fact pleading,' as provided by [Federal Rule of Civil Procedure] 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed . . . ." *Evans*, 936 F.2d at 1091.  Notably, this pleading standard, although liberal, does not "permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.  This practice, if permitted, would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances."  *Id.*

Here, Plaintiff has already amended her complaint twice, and offers no explanation as to why this court should allow a third amendment, by implication, at this stage in the case.  It is difficult to ascertain — and Plaintiff makes no argument to aid the court in its endeavor — why Plaintiff could not have presented this argument in a more timely manner.  It is well settled in the Tenth Circuit that "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 [10th Cir. 1991]; *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185

[10th Cir. 1990]; *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1133 [10th Cir.

1987]).  Plaintiff's proposed amendment is unjustifiably untimely, and is therefore denied.

Moreover, amending Plaintiff's complaint would be an exercise in futility.  Even were I to

entertain Plaintiff's proposed amendment, Plaintiff falls woefully short of meeting the burdens

imposed upon her by the Federal Rules of Civil Procedure and long-established case law to

survive summary judgment.  In motions for summary judgment, the nonmoving party may not rest

solely on the allegations in the pleadings, but must instead designate "specific facts showing that

there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e) (2006).

As mentioned above, in Colorado, a successful breach of contract claim requires: (1) existence of

a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to

perform by the defendant; and (4) damages.  *Diodosio*, 841 P.2d at 1058.  First, Plaintiff offers

neither argument nor evidence that she performed her duties under the indemnification agreement

by giving written notice of her intended claim.  Perhaps more importantly, as will be discussed in

detail in subsequent sections of this Order, Plaintiff cannot establish that she was constructively

discharged.  Accordingly, even assuming Plaintiff had established an enforceable contract in the

form of the Indemnification Agreement, Plaintiff has not established a basis upon which to

demand damages, a fundamental element in a claim for breach of contract.  Defendant Wembley is

therefore entitled to summary judgment on Plaintiff's claim against it for breach of contract.

### ii.    *Condition Precedent: Termination/Constructive Discharge*

A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or

occur before a duty to perform something promised arises.  If the condition does not occur and is

-27-

not excused, the promised performance need not be rendered."  Black's Law Dictionary 289 (7th ed. 1999).  Here, the Severance Agreement provides that "[i]n the event the Company chooses to terminate [Plaintiff's] employment for any reason, [Plaintiff] will be entitled to payment of one-year's [sic] full pay."  (Defs.' Br., Ex. A–1 at 189 [Emerson Dep.], Ex. A–11 [1/1/99 Letter].)  Defendant Wembley USA asserts that Plaintiff resigned from her employment and argues that it is not in breach of the Severance Agreement because a condition precedent —  termination of Plaintiff's employment — was not satisfied, thereby excusing Defendant USA's performance.  (Defs.' Br. at 9–11.)  Plaintiff argues that Defendant Wembley USA constructively discharged Plaintiff from her employment, and "[b]ecause constructive discharge constitutes formal discharge," she is entitled to one year's severance pay under the agreement.  (Pl.'s Resp. at 30.)  Further, Plaintiff "recognizes that no Colorado case has dealt with this exact issue."  (*Id.*)  Plaintiff's argument must fail, for reasons apart from its novelty under the law.  Fatally to her claim, Plaintiff provides no evidence to support the contention that sits at the crux of her argument.

"The question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *see Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 467 (10th Cir. 1990) (same).  "Essentially, a plaintiff must show that she had 'no other choice but to quit.'"  *Yearous v. Niobrara County Mem. Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (quoting *Woodward v. City*

*of Worland*, 977 F.2d 1392, 1401 [10th Cir. 1992]).  The conditions of employment must be objectively intolerable; the "plaintiff's subjective views of the situation are irrelevant."  *Id.*

Before turning to the substance of Plaintiff's argument, I discuss its form.  I remind Plaintiff that pursuant to my practice standards, the "sole purpose" of the required statements of undisputed and disputed material facts is "to establish facts and determine which of them are in dispute.  Legal argument . . . should be reserved for separate portions of the brief."  (Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 7.) Flouting my rules, Plaintiff generally makes legal arguments throughout her statement of facts, and, here, fails to make factual references to support her legal argument.  Plaintiff baldly asserts that "[b]ecause of the lengthy, hostile, demeaning actions of Defendants Wembley [and Wembley USA], as illustrated in Plaintiff's [u]ndisputed [f]acts listed above, a reasonable person in [] Plaintiff's position would view her conditions as intolerable."  (Pl.'s Resp. at 29.)  In response to a motion for summary judgment, a plaintiff may not rest solely on the allegations in the pleadings, but must designate specific facts to demonstrate a genuine issue of fact for trial with respect to her claim.  *See Celotex*, 477 U.S. at 324.  This court is not tasked with combing through Plaintiff's twenty-seven pages of improperly proffered facts to divine and gather those which support her legal arguments, and I decline the opportunity to do so.[14]  Without citation to the

------

[14]I note that Plaintiff's citation to her proffered statement of undisputed facts is especially unhelpful in this case, for several are baseless legal arguments themselves.  By way of example, Plaintiff asserts as fact that "[a]lthough [] Plaintiff worked for Defendants Wembley [and Wembley USA for ten [] years, their actions forced her action . . . she was constructively discharged."  (Pl.'s Resp., Statement of Undisputed Facts ¶ 51.)

record, Plaintiff's assertions are merely conclusory, and thus cannot serve to create a genuine

issue of fact to survive summary judgment. *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d

1284, 1287 (10th Cir. 2000) (noting conclusory allegations without citation to the record are

insufficient to create a genuine issue of fact to defeat summary judgment.). Plaintiff does not

argue that the condition precedent was excused and has not provided sufficient evidence to create

a genuine issue of fact as to whether she was constructively discharged. Therefore, Plaintiff

cannot establish a genuine issue of fact as to the satisfaction of the condition precedent in the

severance agreement. Accordingly, Defendant Wembley USA is entitled to summary judgment on

Plaintiff's claim for breach of contract.

  **e.      *Plaintiff's Sixth Claim: Sex Discrimination***

Defendant Wembley moves for summary judgment on Plaintiff's sex discrimination claim.

(Defs.' Br. at 13–16.) Defendant Wembley USA does not move for summary judgment on this

claim. (*Id.* at 35.) Plaintiff asserts that Defendants Wembley and Wembley USA discriminated

against her based on her sex by denying her opportunities for advancement in violation of Title

VII and the Colorado Anti-Discrimination Act ("CADA"), Colorado Revised Statutes section

24–34–402 (2006). (Second Am. Compl. ¶¶ 62–67.) Defendant Wembley argues that summary

judgment is appropriate because it does not: (1) meet the statutory definition of an "employer"

under Title VII; and (2) qualify as Plaintiff's "employer" under common law principles. (Defs.'

Br. at 13–17.)

  **i.      *Title VII "Employer"***

Title VII provides that it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. § 2000e–2[a][1]). Title VII also provides "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b) (2006). Defendant Wembley argues that because it has no employees, it is not an employer within the meaning of the statute and not subject to its coverage. (Defs.' Br. at 13–16.) Perhaps realizing that she testified "[Defendant] Wembley [] had no employees," Plaintiff does not respond directly to Defendant Wembley's argument. (Defs.' Br., Ex. A–1 at 11 [Emerson Dep.].) Instead, Plaintiff attempts to subject Defendant Wembley to Title VII liability by arguing that Defendants Wembley and Wembley USA "could be considered a single [employer] or joint employer[s]." (Pl.'s Resp. at 34.) Plaintiff offers one set of unsubstantiated facts to support her argument, and does not differentiate between a single employer and joint employers. (*Id.*)

To correct Plaintiff's conflation, I note that a single employer and joint employers are analytically distinct concepts. A plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer. *See Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002). Alternatively, a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. *Id.* Stated more simply, "the single-employer test asks

whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." *Id.*; *see Sandoval v. Boulder Reg'l Communs. Ctr.*, 388 F.3d 1312, 1323–24 (10th Cir. 2004) (single employer test looks at the overall relationships of the two entities, while the joint employer test is "employee-specific," and focuses on "the entities' relationships to a given employee or class of employees"). I separate and evaluate Plaintiff's arguments regarding Defendants Wembley and Wembley USA as a single employer and as joint employers below.

### *(1)      Single Employer*

The single-employer test comprises four factors: (1) interrelation of operations; (2) centralized control over labor relations; (3) common management; and (4) common ownership or financial control. *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999) (citation omitted). The Tenth Circuit has held that not all factors need be present, and the focus of the inquiry is "whether there is an absence of an arm's-length relationship among the companies." *Id.* (citations omitted). Ostensibly to prove up the relevant factors, Plaintiff asserts that: (1) Defendant Wembley USA aids Defendant Wembley in its primary function — filing tax returns on behalf of its subsidiaries; (2) Defendants Wembley and Wembley USA share the same officers; (3) Defendant Wembley owns Defendant Wembley USA; (4) Defendants Wembley and Wembley USA have loaned money to each other; and (5) although Plaintiff was an employee of Defendant Wembley USA, she performed budgeting, tax planning, and tax preparation activities for Defendant Wembley, and assisted Defendant Wembley in its primary function. (Pl.'s Resp. at

34.)  In support of her assertions, Plaintiff offers merely a blanket citation to unspecified "[u]ndisputed [f]acts above."  (*Id.*)

Again, I remind Plaintiff of her duty in a response to a motion for summary judgment to designate specific facts demonstrating a genuine issue of fact for trial with respect to her claim. *See Celotex*, 477 U.S. at 324.  Again, I decline the opportunity to burrow through Plaintiff's submissions to seek out and gather facts to support her legal arguments.  As such, Plaintiff's allegations are merely conclusory, and therefore insufficient to create a genuine issue of fact as to whether Defendants Wembley and Wembley USA are a single employer.  *L & M Enters.*, 231 F.3d at 1287.

### (2)   *Joint Employers*

The joint-employer test "acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." *Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002)  "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Id.* at 1219.  "In other words, courts look to whether both entities exercise significant control over the same employees." *Id.* at 1218; *see also Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 n.4 (6th Cir. 1997) ("The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.").  "Most important to control over the

terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Bristol*, 312 F.3d at 1219.

In her arguments regarding Defendants Wembley and Wembley USA as joint employers, Plaintiff cites the same set of unsubstantiated facts as those purportedly supporting her arguments regarding Defendants Wembley and Wembley USA as a single employer.  (Pl.'s Resp. at 34.) Thus Plaintiff's arguments must fail for the same reasons discussed above.  Further, Plaintiff fails to cite any material fact to demonstrate that Defendants Wembley and Wembley USA shared or co-determined the essential terms and conditions of her employment.  Plaintiff has failed to establish material issues of fact as to Defendant Wembley's liability under Title VII as an employer in its own right, and as a single or joint employer with Defendant Wembley USA. Accordingly, Defendant Wembley is not subject to employer liability under Title VII and is entitled to summary judgment on Plaintiff's claim for discrimination arising thereunder.

ii.     **Common Law "Employer"**

The CADA provides that it is discriminatory employment practice:

[f]or an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation against any person otherwise qualified because of disability, race, creed, color, sex, age, national origin, or ancestry.

Colo. Rev. Stat. § 24–34–402 (2006).  Defendant Wembley argues that it is not subject to

Plaintiff's claim under the CADA because it is not Plaintiff's employer under common law agency

principles.  (Defs.' Br. at 15–16).  Both Defendant Wembley and Plaintiff point the court to a list

of factors to consider: (1) the skill and type of occupation; (2) the source of equipment; (3) the

location of the work; (4) the duration of the work relationship; (5) whether the hiring party may

assign additional work to the hired party; (6) the hired party's discretion over when and how long

to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9)

whether the work is part of the regular business of the hiring party; (10) whether the hiring party

is in business; (11) provision of employee benefits; and (12) tax treatment of the hired party.[15]

(Defs.' Br. at 15, Pl.'s Resp. at 36.)

Defendant Wembley argues that: (1) it did not have an employment contract with Plaintiff;

(2) it did not pay Plaintiff; (3) it did not provide Plaintiff with employee benefits; (4) Plaintiff

performed limited work duties for Defendant Wembley; and (5) Plaintiff performed work for

---

[15]I note that typically, courts consider these factors in determining whether a plaintiff is an employee or an independent contractor.  *See Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1028 (10th Cir. 1996).  Importantly to this case, the factors have also been used to determine which of two entities employed a plaintiff.  *Id.* at n.1.

Defendant Wembley at Defendant Wembley USA's corporate office.  (Defs.' Br. at 15–16.)

Defendant Wembley purports to support many of its arguments based on a combination of: (1)

Plaintiff's testimony that if any documentation of either Defendant Wembley's employment

contract with her or Defendant Wembley's payment of benefits to her exists, then Defendant

Wembley possesses it; (2) Plaintiff's testimony that if Defendant Wembley does not have such

documentation, then no employment contract exists and Defendant Wembley did not pay her

benefits; and (3) Defendant Howard's affidavit, in which he stated he had directed his staff to

search Defendant Wembley's records for such documentation, and the search proved

unsuccessful.  (*Id.* at 15–16, Ex. A–3 ¶ 8 [Howard Aff.].)  Most convincingly, Defendant

Wembley cites Plaintiff's testimony as follows:

> Q. At any time during your employment were you ever paid by [Defendant]
> Wembley []?
> A. [Defendant] Wembley [] had no employees.
>
> Q. At any time during your employment were you ever paid by [Defendant]
> Wembley []?
> A. No.

(Defs.' Br., Ex. A–1 at 11 [Emerson Dep.].)

Plaintiff does not directly address Defendant Wembley's arguments or evidence.  Rather,

Plaintiff argues that the facts regarding the employment relationship are in dispute and the

question of whether Defendant Wembley was her employer ought go before a jury because she:

(1) aided in Defendant Wembley's regular business; (2) testified she did not know whether she

was reporting to Defendant Wembley or Defendant Wembley USA when she performed her

work; (3) believes she received instructions from Defendant Wembley pertaining to her work; and

(4) had contact with Defendant Wembley about her grand jury testimony.  (Pl.'s Resp. at 36–37.)

In support of her first contention, Plaintiff provides no specific citation to the record.  (Pl.'s Resp. at 36.)  As stated previously, Plaintiff cannot rely on conclusory allegations to raise a genuine issue of fact.  *L & M Enters.*, 231 F.3d at 1287.  Plaintiff's second assertion is a mischaracterization of her testimony, in which she merely listed officers of Defendant Wembley to whom she reported.  (Defs.' Br., Ex. A–1 at 105 [Emerson Dep.].)  As to Plaintiff's third and fourth assertions, it is difficult to ascertain how Plaintiff's own impressions of the work environment or Plaintiff's contact with Defendant Wembley about her testimony satisfy any of the factors used to determine employee status.  Plaintiff offers no argument to aid in the process.  Accordingly, Plaintiff cannot overcome her own testimony to raise a genuine issue of fact regarding whether Defendant Wembley was her employer.

Plaintiff has not raised a genuine issue of fact to rebut Defendant Wembley's substantiated evidence that it was her not employer under either Title VII or common law standards.  Consequently, Defendant Wembley is entitled to summary judgment on Plaintiff's claim for sex discrimination.

### f.    *Plaintiff's Seventh Claim: Unlawful Retaliation*

Defendants Wembley and Wembley USA move for summary judgment on Plaintiff's claim for unlawful retaliation.  (Defs.' Br. at 13–16, 30–34.)  Plaintiff asserts that after she filed her first charge of unlawful sex discrimination with the EEOC on October 25, 2001, Defendants Wembley

and Wembley USA retaliated against her.[16]  Pursuant to Title VII, it is unlawful "'for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (quoting 42 U.S.C. § 2000e–3[a]).  Similarly, under the CADA, it is unlawful for an employer to "discriminate against any person because such person has opposed any . . . discriminatory or [] unfair employment practice [under the CADA], because [such person] has filed a charge with the commission, or because he has testified, assisted, or participated in any manner in an investigation, proceeding, or hearing conducted pursuant to [the CADA]."  Colo. Rev. Stat. § 24–34–402 (2006).

In short, both logic and the law require that to bring a retaliation claim, a defendant must have taken action against a plaintiff in response to the plaintiff's own deeds.  Indeed, a fundamental requirement of a Title VII anti-retaliation claim is an adverse employment action. *See Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003).  Not all actions against an employee can be considered adverse employment actions.  Generally, for an employment action to be considered adverse, Plaintiff must have experienced a significant change in employment status, such as hiring, firing, failure to be promoted, reassignment with

---

[16]Plaintiff does not specify which statute governs her claim.  (*Id.* ¶¶ 68–72.)  I assume that Plaintiff intended her retaliation and discrimination claims to receive similar treatment.  Therefore, I construe Plaintiff's retaliation claim as arising under Title VII and the CADA.

significantly different responsibilities, or imposition of a significant change in benefits.  *Annett v. Univ. of Kans.*, 371 F.3d 1233, 1237 (10th Cir. 2004).

Here, Plaintiff alleges Defendants Wembley and Wembley USA retaliated against her by: (1) replacing her with a less qualified male; (2) failing to offer her a permanent position as CFO; (3) removing her authority to write checks, approve purchases, and enter into contracts "on behalf of the company;"[17] (4) removing her supervisory authority and most of her day-to-day responsibilities; (5) forbidding her to attend board meetings; (6) evaluating her performance negatively; (7) refusing to provide her with a written job description; (8) requiring her to perform "menial and demeaning tasks;" (9) excluding her from participation in budget meetings and audits; and (10) berating her capabilities, skills, and mental capacity.  (Second Am. Compl. ¶¶ 68–69.)  In addition, Plaintiff bases her claim on her allegation that the foregoing retaliatory actions created a hostile work environment and her alleged constructive discharge.  (*Id.* ¶¶ 70–71.)  Plaintiff has evidently confused her causes of action and, as a result, presents the court with a rather convoluted claim.[18]  As will be discussed, Defendants Wembley and Wembley USA reach only one basis of Plaintiff's retaliation claim — constructive discharge — accordingly, I need not

---

[17]Given the overall content of Plaintiff's argument, it is surprising indeed that Plaintiff: (1) uses a singular form of "the company," and (2) fails to specify to which Wembley-affiliated company she refers.

[18]By way of example, hostile work environment claims are generally not retaliation claims, but discrimination claims.  The Supreme Court has construed Title VII's prohibition against discriminating against an employee with respect to "compensation, terms, conditions, or privileges of employment" because of the employee's sex to proscribe subjecting an employee to sexual harassment creating a hostile work environment.  *See* 42 U.S.C. § 2000e–2(a)(1) (2006); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986).

discuss whether the other alleged retaliatory actions rise to the level of adverse employment actions or are otherwise proper subjects of Plaintiff's claim.  (Defs.' Br. at 13–17, 30–34.)

Defendant Wembley argues that it is entitled to summary judgment because it is neither: (1) an "employer" as defined by Title VII; nor (2) Plaintiff's "employer" under common law. (Defs.' Br. at 13–17.)  As discussed above, Defendant Wembley is not Plaintiff's employer within the meaning of Title VII or under principles of common law.  Accordingly, Defendant Wembley is entitled to summary judgment on Plaintiff's claim for retaliation.

Defendant Wembley USA argues that it is entitled to summary judgment because Plaintiff cannot establish constructive discharge.  (Defs.' Br. at 30–34.)  Defendant Wembley USA makes no mention of and offers no argument regarding the other aspects of Plaintiff's claim.  Thus, despite its styling, Defendant Wembley USA's motion is actually a partial motion for summary judgment as to Plaintiff's seventh claim.  As established and discussed above, Plaintiff cannot establish constructive discharge.  Accordingly, Defendant Wembley USA is entitled to summary judgment on Plaintiff's claim only to the extent that claim is based upon constructive discharge. The other aspects of Plaintiff's retaliation claim remain pending as against Defendant Wembley USA.

### g.   *Plaintiff's Eighth Claim: Wrongful Discharge*

Defendants Wembley and Wembley USA move for summary judgment on Plaintiff's claim for wrongful discharge in violation of public policy.  (Defs.' Br. at 13–16, 21–24.)  In Colorado, an employee who is hired for an indefinite period of time is generally presumed to be an at-will employee whose employment may be terminated by either party without cause or notice.

*Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987).  Colorado law provides for a narrow public policy exception to the at-will employment doctrine.  To wit, "an employee will have a cognizable claim for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy."  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107 (Colo. 1992) (citation and internal quotation marks omitted).  Plaintiff asserts that Defendants Wembley and Wembley USA violated public policy when they constructively discharged her from her employment in retaliation for her discovery and disclosure of irregularities in Defendants Wembley's and Wembley USA's accounting practices.  (Second Am. Compl. ¶¶ 73–80.)

     To bring a successful claim for wrongful discharge in violation of public policy, Plaintiff must establish that: (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker. *Martin Marietta Corp.*, 823 P.2d at 109.

Defendant Wembley argues that it is entitled to summary judgment because it is not Plaintiff's employer under common law.  (Defs.' Br. at 13–17.)  As previously discussed, Defendant Wembley is not Plaintiff's employer and is thus entitled to summary judgment on Plaintiff's claim for wrongful discharge.  As to Defendant Wembley USA, I need only discuss the third element listed above.  Plaintiff concedes that "Colorado state courts have not yet determined whether constructive discharge is sufficient to prevail on a claim of wrongful discharge in violation of public policy."  (Pl.'s Resp. at 40.)  Nonetheless, Plaintiff argues this court ought accept and construe Plaintiff's alleged constructive discharge as tantamount to willful termination in satisfaction of the third element of her claim.  (Pl.'s Resp. at 38–40.)  Novelty notwithstanding, Plaintiff's claim must fail.

Plaintiff again bypasses the opportunity to provide specific facts substantiated by record evidence in support of her argument, instead offering the conclusory statement that "[a]s aforementioned, [] Plaintiff was constructively discharged."  As previously discussed, Plaintiff's conclusory statements do not raise a genuine issue of fact as to whether she was constructively discharged.  *See L & M Enters.*, 231 F.3d at 1287.  Plaintiff thus provides the court with no substitute to satisfy the termination requirement for her claim.  Accordingly, Defendants Wembley and Wembley USA are entitled to summary judgment on Plaintiff's claim for wrongful discharge in violation of public policy.

### h.     Plaintiff's Ninth Claim: Witness Intimidation

Defendants Wembley and Wembley USA move for summary judgment on Plaintiff's claim for witness intimidation.  (Defs.' Br. at 13–16, 24–29.)  Plaintiff alleges that Defendants Wembley and Wembley USA violated Colorado Revised Statutes section 8–2.5–101 by "intimidat[ing], retaliat[ing] against, and threaten[ing] [] Plaintiff's employment because of her cooperation and participation in giving compelled testimony to a Rhode Island grand jury."  (Second Am. Compl. ¶ 82.)  Section 8–2.5–101 provides, in relevant part, that it is unlawful for any person "to take any action against its employees . . . under its control or oversight solely for[] testifying before . . . court of law . . . at the request of such . . . court."  Colo. Rev. Stat. § 8–2.5–101 (2006). Defendant Wembley argues that it cannot be liable because it was not Plaintiff's employer. (Defs.' Br. at 13–17.)  As previously established, Defendant Wembley's argument is successful. Accordingly, Defendant Wembley is entitled to summary judgment on Plaintiff's claim for witness intimidation.

Defendant Wembley USA argues that Plaintiff cannot maintain her claim because she cannot establish that the alleged actions were based "solely" on her requested testimony.  (Defs.' Br. at 24–29.)  More specifically, Defendant Wembley USA underscores Plaintiff's argument in her seventh claim that the same alleged retaliatory actions were based on her complaints to the EEOC regarding sex discrimination.  (Defs.' Br. at 26–29.)  Defendant Wembley USA points to Colorado case law expressly supporting its position that in order to bring a successful claim under section 8–2.5–101, a plaintiff must establish that any action was taken solely because of the plaintiff's testimony.  *See Hoffler v. Colo. Dep't of Corr.*, 27 P.3d 371, 376 (Colo. 2001)

(upholding dismissal of section 8–2.5–101 claim where the disciplinary action in question "was not based on the sole fact that [the plaintiff] provided testimony"); *see also Slaughter v. John Elway Dodge Southwest/AutoNation*, 107 P.3d 1165, 1168 (Colo. Ct. App. 2005) (explaining section 8–2.5–101 "concretely and discernibly prohibits employers from forbidding or preventing employees from honoring requests for their testimony," and expresses public policy for employees "to be free from termination or other adverse employment action solely for fulfilling" such requests).

Plaintiff responds as follows, ostensibly in an attempt to refute Defendant Wembley USA's argument:

> [t]he term "solely" as used in the statute refers to the employee's actions, not the employer's reasons for discriminating against the employee. That is, if the employer has no valid, lawful reason to treat the employee negatively and the only reason that the employer treats the employee negatively is because of the employee's testimony, the employer violates the statute.

(Pl.'s Resp. at 41.) Bewilderingly, after explaining the purpose and role of the statute, Plaintiff beseeches this court to espouse an entirely different interpretation thereof. Plaintiff entreats:

> [t]his court should not adopt an interpretation that would encourage employers to discriminate, harass, and retaliate for a multitude of reasons where this court can adopt an interpretation that would discourage employers from discriminating, harassing and retaliating altogether.

(*Id.*) Plaintiff cites no case law whatsoever to clarify or support her abstruse position. Further, and more bewilderingly still, Plaintiff argues that she "can show that she was discriminated against solely for her testimony during the Rhode Island grand jury proceedings," but her only supportive citations to the record consist of: (1) two lines of her deposition testimony, delineating the dates

of her employment with Defendant Wembley USA; and (2) a blanket reference to unidentified "undisputed facts listed above."[19]  (Pl.'s Resp. at 41, Ex. B–1 at 6 [Emerson Dep.].)  Under no circumstances can Plaintiff's unsupported, conclusory statements serve to create a genuine issue of fact as to whether Defendant Wembley USA was motivated solely by Plaintiff's grand jury testimony to take any action against her.  *L & M Enters.*, 231 F.3d at 1287 (noting conclusory allegations without citation to the record cannot demonstrate genuine issue of fact for summary judgment).  Accordingly, Defendants Wembley and Wembley USA are entitled to summary judgment on Plaintiff's claim.

### i.      *Plaintiff's Tenth Claim: Outrageous Conduct*

Defendants Wembley and Wembley USA move for summary judgment on Plaintiff's claim for outrageous conduct.  (Defs.' Br. at 13–21.)  "Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted."  *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D.

---

[19]I note that Plaintiff argues she received a negative evaluation, performance criticism, a false accusation of fraud, and threats of termination solely because of her grand jury testimony. (Pl.'s Resp. at 41.)  In her complaint, Plaintiff alleges that she received a negative evaluation and criticism of her performance in retaliation for filing a sex discrimination charge with the EEOC. (Second Am. Compl. ¶¶ 69[h], 69[l].)  In her third EEOC charge, Plaintiff argues that she was falsely accused of fraud in a retaliatory response to her second EEOC claim.  (Pl.'s Resp, Ex. 32[d] [EEOC letter].)  What Plaintiff characterizes as termination threats appear to be Defendant Howard's statements nine months after Plaintiff's grand jury testimony that if Plaintiff did not give written notice of her intent to return to work after a leave of absence, she would be deemed to have abandoned her job.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 40, Ex. B–23 [8/8/02 Letter].)

Colo. 1994); *accord Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. Ct. App. 2003).  Defendant

Wembley asserts that it is entitled to summary judgment because it is not Plaintiff's "employer"

under Title VII or common law standards.  (Defs.' Br. at 13–17.)  Defendant Wembley's

"employer" argument is wholly misplaced in this context, as the tort of outrageous conduct does

not expressly require or contemplate and employment relationship.  *See Gard*, 859 F. Supp. at

1354.  Alternatively, Defendant Wembley joins in Defendant Wembley USA's argument.  (Defs.'

Br. at 35.)  Defendant Wembley USA argues that the actions in Plaintiff allegations do not meet

the threshold requirements for a successful claim for outrageous conduct.  (Defs.' Br. at 17–21.)

       A claim for outrageous conduct contemplates only acts that are "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community."  *Rugg v. McCarty*, 476

P.2d 753, 756 (Colo. 1970); *accord Donaldson v. Am. Banco Corp., Inc.*, 945 F. Supp. 1456,

1465 (D. Colo. 1996).  Eschewing specificity and citation to the record, Plaintiff asserts that

"Defendants Wembley [and Wembley USA] engaged in a pattern of conduct that was intended to

cause or recklessly did cause severe emotional distress. . . .  Plaintiff has made a sufficient

showing to pass the threshold test outlined [by case law]."  (Pl.'s Br. at 38.)  I disagree.

       As stated above, Plaintiff is charged with designating specific facts to demonstrate a

genuine issue of fact for trial with respect to her claims.  *See Celotex*, 477 U.S. at 324.

Conclusory allegations without citation to the record are insufficient to establish such genuine

issue of fact.  *L & M Enters.*, 231 F.3d at 1287.  Additionally, Plaintiff argues that "[a]ny evidence

above that required [sic] to prevail on Plaintiff's Title VII claim may be used to establish

Defendants Wembleys' [sic] [and Wembley USA's] outrageous conduct."  (Pl.'s Resp. at 37.)

Tellingly, Plaintiff cites no case law to support her sophistic contention.  As this court has noted,

a claim for outrageous conduct is "not meant to be an incantation to augment damages" and is

"not some sort of froth to be lathered over other claims, but consists of discrete elements

established in law to prevent the intentional infliction of mental suffering."  *Gard*, 859 F. Supp. at

1354.  Thus, the facts necessary to prove a claim for outrageous conduct "cannot be similar or

identical to, nor can they be said to share a common nucleus of operative facts with, the federal

statutory claims over which [the court] has original jurisdiction."  *Id.*; *see also Katz v. City of

Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000) (noting under Colorado law, "where the

allegations forming the basis of a claim for outrageous conduct are the same as those forming the

basis for a claim of discrimination, and nothing more, they fail to state an independently

cognizable claim"); *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997)

(holding plaintiff's allegations forming the basis of a claim for outrageous conduct must exceed

those which would state a colorable claim of discrimination).  By her own admission, Plaintiff

impermissibly offers only her allegations in connection with her claims for discrimination to

support her claim for outrageous conduct.  Consequently, Plaintiff has failed to establish a

genuine issue of fact as to her claim.  Defendants Wembley and Wembley USA are entitled to

summary judgment on Plaintiff's claim.

### 3.      Conclusion

Based on the foregoing it is therefore ORDERED that:

1. Defendant Wembley's motion for summary judgment (# 115) is GRANTED in part and DENIED in part.  The motion is GRANTED as to Plaintiff's second, fifth, sixth, seventh, eighth, ninth, and tenth claims.  The motion is DENIED as to Plaintiff's fourth claim.

2. Defendant Wembley USA's motion for partial summary judgment (# 115) is GRANTED in part and DENIED in part.  The motion is GRANTED as to Plaintiff's second, fifth, eighth, ninth, and tenth claims in their entirety.  The motion is GRANTED as to Plaintiff's seventh claim, to the extent that claim encompasses retaliation in the form of constructive discharge.  The motion is DENIED as to Plaintiff's seventh claim regarding all other forms of retaliation contemplated in the claim.

3. The final judgment entered at the conclusion of the case will include judgment in favor of Defendant Wembley USA and against Plaintiff on Plaintiff's second, fifth, eighth, ninth, and tenth claims, dismissing those claims against Defendant Wembley USA with prejudice.  The final judgment will also include judgment in favor of Defendant Wembley and against Plaintiff on Plaintiff's second, fifth, sixth, seventh, eighth, ninth, and tenth claims, dismissing those claims against Defendant Wembley with prejudice.

4. The court will hold a Final Pretrial Conference commencing at **2:45 o'clock p.m. on Friday, June 30, 2006**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final

Pretrial Order, a copy of which can be downloaded from the court's web site, specifically

http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template

located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web

addresses should be used to insure that the proper format is observed.

     5. The motions hearing scheduled for June 7, 2006, is VACATED.

     Dated this 1st day of June, 2006

               BY THE COURT:


               s/ Edward W. Nottingham
               EDWARD W. NOTTINGHAM
               United States District Judge